UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Dana R., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:23-cv-03147-CRL-KLM |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) ) |
|     Defendant. | ) ) |

## REPORT AND RECOMMENDATION

**KAREN L. McNAUGHT, United States Magistrate Judge:**

This is a civil action under 42 U.S.C. §§405(g) and 1383(c)(3) for judicial review of the denial of plaintiff's application for social security disability benefits under Titles II and XVI of the Social Security Act.[1] The Court has considered plaintiff's complaint, substantive brief, and reply brief seeking remand of the decision by the Administrative Law Judge ("ALJ") and defendant's substantive brief seeking affirmance of the ALJ's decision. (Doc. 1, 9, 15, 17). For the reasons stated herein, this Court recommends the decision of the ALJ be **AFFIRMED**.

I.     **BACKGROUND**

Plaintiff, Dana R., is a 47-year-old woman with degenerative disc disease and sacroiliitis, bilateral occipital neuralgia, fibromyalgia, migraines, and grade

---

[1] *See* 42 U.S.C. §405(g) (requiring the court to enter judgment upon the pleadings and transcript of the administrative record) and §1383(c)(3) (requiring the same).

left ventricular dysfunction and mild mitral valve stenosis. (R. 19, 72).[2] Plaintiff has some college education and has worked, *inter alia*, as a licensed practical nurse. (R. 44). Plaintiff was 45 years old when she applied for disability insurance benefits under Title II and supplemental security income under Title XVI on December 31, 2020. (R. 248, 255). Both applications were denied initially on July 14, 2021, and on reconsideration on October 26, 2021. (R. 149, 154). Plaintiff requested a hearing on November 24, 2021, which was held on July 5, 2022, before the Honorable Stephen Hanekamp (the ALJ). (R. 39, 170). At the hearing, plaintiff was represented by an attorney, and both plaintiff and a vocational expert testified. (R. 39). The ALJ issued a decision affirming the denial of benefits on August 26, 2022. (R. 16-32). The Appeals Council denied plaintiff's request for review and the ALJ's decision became final. (R. 1-5). Plaintiff timely filed this civil action seeking review of the ALJ's decision on April 20, 2023. (Doc. 1).

## II. DISCUSSION

### A. Legal Standard

#### 1. Standard of Review

When reviewing the administrative record, the court does not "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). The court reviews a decision denying benefits to determine only whether the ALJ properly applied the correct legal standards and whether substantial evidence supports the ALJ's conclusions. *Jelinek v.*

---

[2]References to the pages within the Administrative Record will be identified by (R. page number). The Administrative Record appears at Docket Entry 6-9 (Doc. 6-9).

*Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial" here means "more than a mere scintilla," for which the threshold of evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In the Seventh Circuit, the Commissioner's reasoning must "build an accurate and logical bridge between the evidence and the [conclusion]." *Powell v. Kijakazi*, 664 F. Supp. 3d 846, 850 (C.D. Ill. 2023).

### 2. Disability: Five-Step Analysis

In determining a claimant's disability, the ALJ conducts a five-step sequential test. *See* 20 C.F.R. § 404.1520(a)(4). The burden to prove disability is on the claimant in the first four steps, but shifts to the ALJ to disprove disability at the fifth step. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023).

First, the claimant must prove he is not currently engaged in substantial gainful activity. *See* 20 C.F.R. §404.1520(a)(4). Second, he must prove his medically determinable impairment lasting at least 12 months is "severe." *Id.* Third, claimant must prove his impairment is medically equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1 ("Listings"), in which case the claimant is automatically presumed disabled. *Id.* Because meeting the presumption requirement in step three merely expedites the decision-making process for a claimant who is considered "legally" disabled, the sequential evaluation does not stop there for those claimants whose impairment is excluded from the Listings. Thus, if the claimant's severe medical impairment does not meet any of the requirements in the Listings, then the ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.*

The RFC is a list of activities representing the most a claimant can work despite his limitations. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The RFC evaluation happens between steps three and four, and applies to steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv-v). Fourth, the claimant must prove he is incapable of performing his past relevant work. *Id.* Fifth, the ALJ must prove the claimant can perform other work existing in substantial numbers in the national economy. *Id.*

### B. Analysis

At issue here is the RFC step. Plaintiff raises two arguments: First, by inadequately explaining why she discounted the medical opinions of Dr. Eiben and Dr. Rossi, the ALJ wrongly concluded that plaintiff has the RFC to work. Second, the ALJ minimized plaintiff's pain by wrongly discrediting her testimony. This Court disagrees.

### I

First, plaintiff argues the ALJ did not focus on the 20 C.F.R. §404.1520c(c) factors—supportability and consistency—when she concluded the medical opinions of Dr. Eiben and Dr. Rossi medical opinions were unpersuasive. (Doc. 9 at 8); (R. 30). To resolve these arguments, we ask whether the ALJ followed the correct legal standard enumerated in 20 C.F.R. § 404.1520c(c) and whether the ALJ's decision is supported by substantial evidence—evidence "a reasonable

mind might accept as adequate to support a conclusion." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020).

Plaintiff finds issue with the statements of the ALJ about plaintiff's prescription Tramadol, arguing that Tramadol is, indeed, an opioid. (Doc. 9 at 9). The ALJ stated "Tramadol is the strongest medication [plaintiff] has been prescribed with her pain management provider specifically noting she is not prescribed opioids" and "pain management specifically noted they do not prescribe opioids; however, her primary care provider did prescribe Tramadol, but nothing stronger." (R. 27, 29). The Court notes Tramadol is an opioid, but whether plaintiff is prescribed an opioid is not dispositive on the issue of benefits.

As to Dr. Eiben's medical opinion, Plaintiff contends the ALJ erred in rejecting the opinion because the Seventh Circuit has repeatedly held a plaintiff's testimony about her pain may not be discredited solely because there is no objective medical evidence supporting it. (Doc. 17 at 1); *See Vanprooyen v. Berryhill*, 864 F. 3d 567, 572 (7th Cir. 2017). The Seventh Circuit has made this standard clear. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)(holding lack of medical evidence alone is an insufficient reason to discredit testimony); *See also Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018)(holding fibromyalgia cannot be evaluated or ruled out by using objective tests); *See also Vanprooyen v. Berryhill*, 864 F. 3d 567, 572 (7th Cir. 2017)(holding fibromyalgia cannot be measured with objective tests aside from a trigger-point assessment). However, plaintiff confuses the evaluation of medical opinions with the analysis of fibromyalgia pain. The Code of Federal Regulations ("C.F.R.") plainly enumerates the law of

medical opinion evaluations in 20 C.F.R. §404.1520c, and the United States Social Security Administration enumerates policies—by which an ALJ is bound—of fibromyalgia analysis, including crediting a claimant's testimony about his pain, in SSR 12-2p.

Nonetheless, plaintiff's argument follows that the ALJ erred in finding the medical opinion of Dr. Eiben unpersuasive. The ALJ is not to defer to any medical opinion. 20 C.F.R. §404.1520c(c). Instead, she considers medical opinions using the applicable factors listed in paragraphs (c)(1) through (c)(5) of 20 C.F.R. §404.1520c(c). *Id.* The two most important factors the ALJ must consider when evaluating the persuasiveness of medical opinions is supportability and consistency. 20 C.F.R. §404.1520c(c)(1). Supportability means "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [his] medical opinion . . . the more persuasive the medical opinion will be." *Id.* Thus, the ALJ is to give more weight to medical opinions with support by internal explanation than to those without. *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023). Consistency means "the more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)." 20 C.F.R. §404.1520c(c)(2).

Here, Dr. Eiben found, *inter alia*, certain limitations in the ability of plaintiff to walk, stand, lift, and carry. (R. 1177-1178). He also opined plaintiff would be absent from work more than four days per month, 25 percent of the workday, and two to three unscheduled times lasting 15 to 20 minutes each day. *Id.* When

asked which medical findings support the limitations he check-marked, Dr. Eiben wrote "Fibromyalgia, neural foraminal stenosis" and referred to this reasoning by writing "same" in response to each subsequent question asking the same. (R. 1175-1177). The ALJ accurately and logically reasoned Dr. Eiben's medical opinion lacked supportability. (R. 30). The ALJ also reasoned the findings of Dr. Eiben were not consistent with the other evidence. *Id.* She explained clinical signs have most commonly been "mild," showing "normal strength," "normal gait and station," "normal upper extremity motor exam," and plaintiff could "heel, toe, and tandem walk." *Id.* The ALJ reasoned such evidence was inconsistent with the opinion of Dr. Eiben of "extreme" limitations on plaintiff's ability walk, stand, lift, carry, and work.  The ALJ's determination is aligned with the legal standard and a reasonable mind can accept the evidence the ALJ cites as inconsistent to adequately support the conclusion that Dr. Eiben's findings are inconsistent with the evidence in the record.

Plaintiff argues some of the exhibits to which the ALJ cited in her decision finding the medical opinion of Dr. Eiben unpersuasive do not support the conclusion of the ALJ that plaintiff's clinical signs are more commonly mild than they are "positive." (Doc. 9 at 13); (R. 29); *See* R. 442, 446, 450, 458, 465, 468. Plaintiff claims the ALJ cherry-picked her cited evidence to support her conclusion that the medical opinion of Dr. Eiben lacks supportability and is inconsistent with the other evidence in the record. *Id.* Plaintiff contends the ALJ cites to pages in the record that do not substantiate such a finding. *Id.* The ALJ does note that clinical signs have been positive at times and, even if there is evidence

in the records the ALJ cites that could support a different conclusion, this Court cannot decide that a different conclusion should have been made by the ALJ. The records plaintiff finds issue with are only a small portion of the evidence the ALJ cites to, the rest of which do substantiate her conclusion. Thus, the ALJ's bridge tying the inconsistent evidence to her conclusion that Dr. Eiben's medical opinion is inconsistent with the other evidence in the record is both accurate and logical. This Court finds the ALJ did not err in finding Dr. Eiben's medical opinion unpersuasive.

As to Dr. Rossi's medical opinion, Plaintiff argues the ALJ erred when she concluded the opinion of Dr. Rossi was unpersuasive due to its reliance "entirely" on plaintiff's subjective statements instead of the doctor's own examination or review of the record. (Doc. 9 at 10); (R. 29). Plaintiff claims the sentence on the note that reads "I confirm that the findings reflect my exam" sufficiently establishes there was a professional examination conducted by Dr. Rossi. (R. 657). Plaintiff is correct that Dr. Rossi's medical examination was not, as the ALJ found, internally based "entirely" on plaintiff's subjective reports." (R. 29). However, the ALJ may find a medical opinion unpersuasive because it lacks internal supportability. 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ's analysis correctly follows this legal standard where the ALJ found Dr. Rossi's medical opinion unpersuasive because it was primarily supported by plaintiff's subjective reports instead of the medical examiner's own findings. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022)(finding an ALJ may discount a physician's opinion that is based primarily upon a claimant's subjective complaints).

Dr. Rossi examined, *inter alia,* plaintiff's nerves, musculoskeletal system, and range of motion. (R. 654-655). She tested and found two fibromyalgia trigger points. *Id.* She also tested, inter alia, plaintiff's joints, ability to lift, squat, sit, walk, balance, and use her hands. *Id.* She examined plaintiff's lower-back MRI scan and previous neurology visit report. (R. 657). She then recorded plaintiff's own description of the limiting effect of her pain. (R. 657). She found plaintiff's range of motion in her back and neck to be limited. (R. 655-656).

Indeed, Dr. Rossi wrote in plaintiff's own reported limitations related to a full workday in the "due to" box, but supported plaintiff's descriptions with her own findings, namely, plaintiff's "decreased range of motion in her lumbar spine." *Id.* However, this was the only finding of hers that she wrote in all categories of plaintiff's limitations. Therefore, despite Dr. Rossi's inclusion of her own observation, a reasonable mind may accept as adequate the finding that the limitations she found were still primarily based on plaintiff's own reports. *See Prill v. Kijakazi,* 23 F.4th 738, 751 (7th Cir. 2022). This Court finds the ALJ did not err in finding Dr. Rossi's medical opinion unpersuasive.

## II

Second, plaintiff argues the ALJ's RFC determination is not supported by substantial evidence. Specifically, plaintiff claims the ALJ may not disregard her statements about the intensity, persistence, and limiting effects of pain solely because they are not substantiated by objective medical evidence. (Doc. 9 at 12). She correctly explains that fibromyalgia pain cannot be substantiated by objective medical evidence. *Id.* However, this Court finds the ALJ's analysis of

plaintiff's statements followed the correct legal standard and is supported by substantial evidence.

When a claimant alleges pain and other symptoms due to fibromyalgia, the ALJ evaluates those symptoms using a two-step process. SSR 12-2p. First, there must be a medically determinable impairment reasonably expected to cause the pain. *Id.* Second, the intensity, persistence, and limiting effects of the pain must affect the claimant's ability to work. *Id.* In evaluating the effect of claimant's pain, claimant's own statements about the pain are included in the analysis and evaluated against the evidence. SSR 12-2p. "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." *Id.* The ALJ considers such evidence in assessing the consistency of the claimant's allegations with the evidence. See SSR 16-3p.

Fibromyalgia and objective medical evidence is not a novel concept in the Seventh Circuit. Courts have recognized that, in most cases, there will be no objective medical evidence indicating the presence or severity of fibromyalgia. *Criner v. Barnhart*, 208 F. Supp. 2d 937 (N.D. Ill. 2002); *See also Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017)(finding fibromyalgia cannot be measured with objective tests). Considering there are no objective tests or medical

evidence to measure the severity of fibromyalgia, the ALJ (and a reviewing court) is left with plaintiff's subjective complaints of pain to determine the severity of the impairment when a diagnosis of fibromyalgia is confirmed.

The Seventh Circuit, however, has also made it expressly clear that an ALJ "may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014). This is because "pain can be severe to the point of being disabling even though no physical cause can be identified, though in such cases, the claimant's credibility becomes pivotal. Also, the lack of objective support from physical examinations and test results is still relevant even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain." *Id.* at 1050; *See also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)(finding an ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it).

However, an ALJ need not accept as true all subjective allegations of pain by individuals with fibromyalgia and find them disabled if they testify that their pain prevents them from performing any activities. *See Sarchet*, 78 F.3d at 306-307 (stating that such a severe case of fibromyalgia as to render an individual totally disabled from working is the minority). The mere presence of fibromyalgia does not render a plaintiff disabled. *Id.*

SSR 12-02p resolves this conflict. SSR 12-02p, specifically dealing with fibromyalgia, states that "[a]s in all claims for disability benefits, we need objective

medical evidence to establish the presence of [a medically determinable impairment]." In evaluating a person's statements about his or her fibromyalgia symptoms, SSR 12-02p states that the two-step process set forth in the regulations and SSR 96-7p is used.

On March 28, 2016, SSR 96-7p was replaced with SSR 16-3p. Under SSR 16-3p, the ALJ "considers all of an individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms." *Id.*

Again, an ALJ may not discount a claimant's testimony solely because it is not substantiated by objective medical evidence. 20 C.F.R. § 404.1529(c)(2); SSR 16-3p; *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015). However, an ALJ may consider the lack of objective evidence in conjunction with other factors, such as the claimant's activity levels and the treatment she received to alleviate the pain or other symptoms. 20 C.F.R. § 404.1529(c)(2)-(4); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); SSR 12-2p (stating "if objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms").

Here, the ALJ concluded plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms (mainly pain) are "not supported by the remainder of the evidence of record." (R. 26). While the ALJ did base some of this conclusion on the lack of objective evidence, she also considered plaintiff's medications, treatments, attempts to obtain treatment and inconsistencies in the evidence. The ALJ pointed out inconsistencies in plaintiff's testimony about the duration of her neck pain. (R. 27). She considered the effects of plaintiff's prescribed medications and injections. *Id.* She explained plaintiff's poor posture was sometimes linked to her reduced or painful range of motion and considered plaintiff's infrequent attempts to follow her physicians' recommendations of physical therapy. *Id.* She also considered inconsistencies in plaintiff's physical examinations of fibromyalgia, namely "some appreciable trigger points" but a "normal gait, with no reference to tender points, swollen joints, joint stiffness, or weakness." (R. 28). The ALJ also considered plaintiff's prescribed medications as they relate to her fibromyalgia. She noted her RFC findings accommodate plaintiff's limitations related to pain and limit the risk of aggravating it. *Id.* This evidence, along with the still-relevant lack of objective support from physical examinations and test results, led the ALJ to conclude plaintiff has the RFC to sustain work. The ALJ sufficiently followed the regulations enumerated in SSR 12-2p and supported her conclusions with substantial evidence.

## II.     CONCLUSION

For these reasons, it is hereby recommended: (1) the ALJ's decision denying benefits to plaintiff, Dana R. be AFFIRMED; and (2) judgment be entered in favor of the Commissioner.

The parties are advised any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. §636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

Entered: October 29, 2024.

/s/ Karen L. McNaught
KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE